Ruffin-, C. J.
 

 The only authority cited in support of the judgment is the modern case of
 
 Prince
 
 v
 
 Nicholson,
 
 5 Taunton, 665, and one or two others, founded on it.
 

 That case admits, that it lays down a new rule, not au-thorised by any precedent. But it is to the point. If, however, we were’ satisfied with the reasoning on which it goes,
 
 *347
 
 we should not be at liberty to follow it. We have supposed it to be settled doctrine in this State, that, after a suit by a creditor, an executor cannot prejudice that creditor by the voluntary payment of another debt of equal dignity, and, further, that, after a plea in one action, the executor cannot prejudice the plaintiff therein by availing himself, as a de-fence for want of assets, of a judgment in another action subsequent to the plea in the first. The plea ought to state the assets truly, as they existed, in the one case, at the time of the suit brought, and in the other, at the time of the plea pleaded. The former position has been lately stated in
 
 While
 
 v
 
 Arrington,
 
 3 Ired. 166, which followed many previous cases. The latter was decided on .demurrer in
 
 Churchill
 
 v
 
 Comron,
 
 Conf. Rep. 555. 1 Murph. 39. That was a plea of a judgment since the last continuance, and the plea was held bad by the judgment of the whole Court. The question was again made in
 
 Collins
 
 v
 
 Underhill, 2
 
 No. Car. L. Repos. 579, and decided the same way a second time by the Supreme Court of 1816. These repeated adjudications of our own Courts must outweigh the recent decisions of those of another Country, introductory of a novel rule into the common law, and resting only on general reasoning. Indeed, as authorities, those adjudications of our highest tribunals are conclusive on us at this day, the more especially, as we believe they have ever since been regarded by the Profession as fixing the law, and the Legislature has obviously acted on the same idea.
 

 . But we own, that to our apprehensions the decisions of our Courts are sustained by the better reasons. We think the law ought in this, as in other instances, to favour the diligent. Not indeed to the injury of a faithful executor by subjecting him to the payment of the same sum twice or oftener, for the want of a power, conferred by the law fairly to appropriate it once, and protect himself by such appropriation. But no such injustice is worked by the law. For as, upon a deficiency of assets to pay two creditors, the executor cannot compel them to accept proportional shares of their
 
 *348
 
 debts, the law allows the executor, asa boon to him and for his protection, to pay one in preference to the other. So, upon a like principle, which is well explained by Loejo El-lenboRough in
 
 Tollput v Wells,
 
 1 Maul. & Selw. 395, an executor, when sued by two or more creditors, may confess judgments to some to’ the amount of the assets, and plead them to actions of the others. Nay, the indulgence to the executor is still more liberal, and properly so. In
 
 Waters
 
 v
 
 Ogden,
 
 Dong. 453, an administrator pleaded
 
 plena admin-istravit pr oiler
 
 £48, and to anotheraction
 
 plene administra-vit prsster
 
 the same £48 — and as to that sum, that he had confessed it in the other action in a plea at the same term. It was held good, because the defendant had in the first action accounted for all the assets, and done all in his power to appropriate them. He had not enough to satisfy the whole demand, and therefore could not confess judgment in the first action; nor could he compel the plaintiff in that action to confess his plea and take judgment for the sum confessed, as he might think the defendant had more'assets. Hence, as the executor could do no more than he had done, he was of necessity protected in such appropriation of the assets before pleading in the other action. But that clearly excludes the idea, that after pleading falsely in one action, an executor can confess judgment or confess assets in another suit, and plead it sinee the last continuance. The plea must be in due time; that is, when the executor has been first obliged to plead.
 
 A
 
 difference is taken, indeed, in
 
 Prince v Nicholson,
 
 between it and
 
 Waters v
 
 Ogden; namely, that in
 
 Waters
 
 v
 
 Ogden,
 
 the defendant admitted the debt in each of the actions brought against him, while in the other he felt it his duty to dispute the debt by pleading the general issue, so that he could not confess assets therein and plead that in the second suit. Hence, the Court extended the discretion of the executor to the confessing of judgment, in a subsequent action, and allowed him to plead that
 
 puis dar-ricn continuance
 
 in a prior one, wherein he had before pleaded the general issue and thereby admitted assets. It was said by Chief Justice Gibbs, it was to be presumed
 
 *349
 
 that the reason, why the executor did not defend the second action, was because he knew the claim was just, and, by inference, that he defended the first action because he believed that claim to be unjust. From that hypothesis was deduced the necessity for so extensive, and, as it seems to us, so dangerous a discretion to the executor. Such a discretion we yield, up to the time of the plea pleaded; and that seems ample enough. Where an action is brought and the executor makes his defence, he should be compelled to make one he can stand by, and, like other defendants, ought to be concluded by his allegations and admissions therein contained. It is, then, time that he should act definitely, so that some consideration may be shewn for the rights of the other party,, and that he may know on what points of law or fact they depend. They ought not to rest perpetually or indefinitely in the discretion of the defendant with a power at any moment, after heavy costs, incurred by the creditor in proving, the debt or fixing the executor with assets, to defeat the action by diverting the very assets in the concealment of which the executor was about being detected, from the detecting creditor to one, more favoured because less urgent. An executor, like other persons, should abide by his defence, once made, and especially in reference to the assets, of which his duty requires him to keep true accounts.
 

 It is true, there may be a difficulty, where, the executor conceives that his duty requires him to deny the debt. But the difficulty is not serious, as it seems to us, and was well solved in the argument for the plaintiff in
 
 Prince
 
 v
 
 Nicholson,
 
 by saying that the Court always, in a proper case, gave the executor time to plead in the one action till judgment had passed in the other. The argument did not, indeed, prevail in that case, and the reply to it was, that the granting of time was but matter of indulgence, and the executor ought to be entitled to the deference as a matter of right. But whether in such case, the grave, impartial, regulated and legal discretion of a Court, or the arbitrary will of an interested and irritated litigant executor, may be most wisely trusted,
 
 *350
 
 let anyone judge. That the court had prevented mischiefs creditors and executors, by regulating the period of pleading in the several actions upon just terms is unquestion-able. It was acknowledged in that case. It is so stated in
 
 Tollput
 
 v
 
 Wells;
 
 where it is said,
 
 the
 
 practice was, if an executor applied for time to plead, to grant it only on condition of his not confessing judgment: a condition so obviously nugatory, as to render it ridiculous to impose it, if the executor could plead a judgment since the last continuance. And that able lawyer, and eminent Judge, Mr. Justice Bay-uey, lays down the law in that case clearly the other way. His words are, “an executor may, pending an action against him by one creditor, confess a judgment to another in equal degree, provided he do it before he is compelled to plead to the action ; because up to that extent the law allows him to give a preference.” The same principle is laid down in Wentworth’s Office of Executors 145,
 

 But if
 
 Prince
 
 v
 
 Nicholson,
 
 be law in England, the very principles of that case forbid the plea in this case. First, that time to plead, which was not there allowed any influence towards upholding the old rule of law, because it was not the absolute right
 
 of the executor, but
 
 was fettered with con di - tons, and depended on the indulgence of the Court, is given in this State untrammelled and at the mere will of the executor. By the Revised Statute, c. 46, s. 23, 24, & 25, an executor cannot be compelled to plead to an action, brought in a Court of Record before the expiration of nine calendar months from his qualification. And, if he be warranted before that period, it is the duty of the magistrate, by entry on the warrant, to postpone the trial to some day after the expiration of that time. And, further, if upon the trial of the warrant, the executor be desirous to avail himself of the want of assets, he may suggest it to the magistrate, who shall endorse the same on the warrant, and if he find the plaintiff’s claim to be just, he shall give judgment therefor, and return the warrant with the endorsements and judgment to the next County Court, “where the defendant may plead any plea,
 
 *351
 
 relative to the assets, which could be pleaded, had the suit been instituted returnable to said term.” It is true, that it is not in terms enacted, that a rule shall be given for pleading in one action, when another shall have been decided. But to the purpose in hand, it is substantially so. The long period of nine months from his qualification is given for pleading, if the executor chooses to take it, because the Legislature considered, that in the mean while the executor could, in almost every case, satisfy himself what claims were just or unjust, dispose of the estate and ascertain the assets, so as to be able to appropriate them among the most meritorious creditors, and thus -plead, with respect to the assets, without any peril to himself. The postponement is not absolute in every case, but only at the instance of the executor in each particular action, and therefore, within the nine months he may dispose of all the assets by making payments or confessing j udgment. And if that period should, contrary to all reasonable expectation, prove to be insufficient to enable the executor to plead safely, he may still apply, as at common law, for an enlargement of, the time which would, in a very strong case, doubtless, be granted. It is plain upon the face of the act, that the Lsgislature either-held, according to the cases of
 
 Churchill
 
 v
 
 Comron,
 
 and
 
 Collins v Underhill,
 
 that an executor was by law, as it then stood, bound as to the assets by his plea pleaded, or meant that it shoulc\ in future be so. For, to what end is the executor to be allowed arbitrarily to take time to plead, and thus delay the creditors, if, when he pleads, he is not concluded, but may subsequently appropriate the assets by confessing judgments, and plead that appropriation
 
 puis darrein continuance
 
 in an action wherein he had before admitted assets? But this is placed beyond doubt by the provision for pleading in a case adjourned to the County Court by a justice of the peace; which is not, that the plea shall relate to the commencement of the suit, nor to the suggestion of a want of assets before the magistrate, but expressly, that the
 
 *352
 
 plea relative to the assets, may be any “
 
 which could he pleaded, had the suit been instituted returnable to that term."
 
 Thus shewing that the material point of time, at which the executor’s hands were understood to become tied, as to the disposition of the assets, in respect to each particular creditor, is, where he is called on to plead to the action of that creditor. The Court could not sustain this plea without obvious disrespect to the Legislative interpretation of the previous law or their intention as to what it should be. We therefore, conclude, that the plea would be bad, were this an original action brought to the County Court, and consequently open, when the executor was called on to plead to it, to every defence, as well in denial of the debt as of assets.
 

 But if that were otherwise, then, Secondly, this particular case, we think is clearly one, in which, there is no pre-tence for admitting the plea. The peculiar nature of it, seems to have been overlooked; for it is entirely distinguishable from Prince v
 
 Nicholson.
 
 The main ground of that case, is that it was unavoidable to entrust the executor with a discretion to defend or not defend the actions by
 
 denying
 
 or not denying the debt, as he did in that case ,• and that it was to be presumed that he did so
 
 bona
 
 fide; and therefore, that he ought not to be prejudiced by denying the debt and not confessing assets in a first suit, so as to protect himself ha a second, in which judgment was first recovered to the amount of the assets. Now, that wholly fails in the case before us. Here the defendant did not and could not deny the debt by plea in the
 
 County
 
 Court. The debt to the plaintiff was established by the judgment of the magistrate, and the executor made no resistance to it. If he meant to deny
 
 the debt, he
 
 must appeal as in ordinary cases. Under this Act of 1828, he cannot call that in question again, and
 
 the only point
 
 that could be made, after the case got into the county Court, was “relative to the assets.” Then, this case is that of a creditor claiming a debt, admitted
 
 from the beginning
 
 to be just, and is, therefore, not analogous to
 
 Prince
 
 v
 
 Nicholson,
 
 but rather
 
 Waters v Ogden,
 
 which protects the executor as to the as
 
 *353
 
 sets, where he had confessed them to a prior action or one brought to the same term with that in which he is called to plead. The defendant said to this plaintiff, when he brought his suit, “I know the debt you claim is due to you, and therefore, I admit it; but I have no assets to pay any part of. it, and that is my only reason for not paying you.” The plaintiff, not believing the representation about the assets, took issue on that point, and undertook to prove that the defendant had assets. Then, after a protracted litigation of six years, and when the executor discovers that the plaintiff is about to prove the assets on him, the executor comes forward and says again, “it is true, when I falsely denied having any assets, that I had a sufficiency to pay you, and, as I knew your debt was just, I ought then to have paid you, but now you ought not to compel me to do so, because the other day I found out another just debt of my intestate, for which have confessed judgment, in order to defeat your suit and escape a judgment against me for the costs.” Surely, there is as little law as fairness in such a defence. If it were sustained, it would present strong inducements to executors be careless in their accounts, and dishonest in ther administrations.
 
 When
 
 an issue upon the assets is found for plaintiff, his judgment is for the debt and costs
 
 de bonis tes-tatoris, et, si, non, de bonis proprius execuloris
 
 as to costs. It caffihardly be doubted, that in every case, in which an executor found that a creditor was about to prove assets on him, he would, if possibble, defeat that creditor by finding another, and confessing judgment -to him. Where executor answers, as to assets, in an action for a debt which he does not dispute, common honesty requires, that he should answer truly, and enable that creditor to have the benefit the assets, which no other creditor is then claiming. The question, in that stage, is between creditors only; and, between them diligence certainly creates a preference. the executor wilfully endeavors to baffle a just creditor falsely denying assets, he gets no more than his deserts by being made at all times to answer for the assets, which
 
 *354
 
 be unquestionably ought to have confessed in the
 
 suit at the
 

 It may not be amiss to mention that these principles have tjje sanchorij not only of the opinion of the present members of the Court, but also that of the late Judge Gaston. A year or more ago a bill in equity by the present defendant, a--gainst the plaintiff and several other creditors, who had suits in like circumstances, stating the whole case and seeking relief upon some equitable ground of a mistake as to a sum of money not being assets, which turned out to be assets, was submitted to Judge Gaston
 
 for an
 
 injunction. He thought proper to consult his brethren, and, upon consideration, we were all of opinion, that the plaintiff had concluded himself b3^ his incautious pleading at law, and that he could have no relief in equity; and we declined making any order on the
 
 bill.
 

 Upon reconsideration of the question, the present Court is also unanimous, that the judgment must be reversed, and the demurrer sustained; and the cause remanded with insl ructions to proceed therein according to law.
 

 Per Cuhiam, Ordered Accordingly.